# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| YOLANDA DIANE BLAYLOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 2:14-cv-00225-SGC |
| ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, Commissioner, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

The plaintiff, Yolanda Diane Blaylock, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and Supplemental Security Income ("SSI"). Ms. Blaylock timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 12).

### I.    FACTS AND PROCEDURAL HISTORY

Ms. Blaylock was born in 1963 and has a high school education. (R. 26). Ms. Blaylock originally claimed she became unable to work on April 7, 2010, due to heart problems and mental illness. (R. 98, 135). During the hearing before the Administrative Law Judge ("ALJ"), Ms. Blaylock, via counsel, amended her disability onset date to August 17, 2011. (R. 36).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination

of whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. §§ pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Ms. Blaylock had not engaged in substantial gainful activity since August 17, 2011, the amended alleged onset date. (R. 22). At step two, the ALJ found Ms. Blaylock suffered from the following severe impairments: depression, a history of crack cocaine abuse, and a history of myocardial infarction. (*Id*.). The ALJ found these impairments significantly limited Ms. Blaylock's ability to perform basic work activities. (*Id*.). However, based upon the medical record, the ALJ found: (1) Ms. Blaylock's complaints of hypertension and impaired vision in her right eye to be non-severe; and (2) Ms. Blaylock's reported lower back problems constituted a non-medically determinable impairment. (*Id.*).

At step three, the ALJ found Ms. Blaylock did not have an impairment or combination of impairments meeting or medically equal to the severity of one of the listed impairments. (R. 22-24). Specifically, the ALJ determined Ms. Blaylock failed to satisfy the listing requirements for mental impairments. (*Id.*). This conclusion was based on the ALJ's findings that Ms. Blaylock displayed: (1) moderate limitations in activities of daily living; (2) moderate difficulties in social functioning; (3) moderate limitations in concentration, persistence, or pace; and (4) no extended episodes of decompensation. (*Id.* at 23-34).

Before proceeding to step four, the ALJ determined Ms. Blaylock retained the RFC to perform light work with non-exertional limitations to non-complex job tasks with minimal interaction with co-workers and the general public. (R. 24-26). Additionally, the ALJ found Ms. Blaylock was precluded from work around unprotected heights or dangerous machinery. (*Id.*). In reaching this conclusion, the ALJ considered all of Ms. Blaylock's symptoms and the medical evidence of record. (*Id.*). The ALJ concluded that, while Ms. Blaylock's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged, her testimony

3

concerning the severity, persistence, and effects of these symptoms was not credible in light of the medical record. (*Id.*). Regarding Ms. Blaylock's mental condition, the ALJ found the medical record and testimony offered at the hearing reflected effective control of her symptoms. (*Id.* at 25). Regarding Ms. Blaylock's history of crack cocaine abuse, the ALJ noted that the medical record showed it was in remission. (*Id.*). Regarding myocardial infraction, the ALJ noted: (1) the medical record showed little cardiac care after 2007; (2) the consultative examination was unremarkable; and (3) primary care records from 2012 concerned an unrelated condition and did not indicate treatment for heart problems. (*Id.*).

The ALJ also considered all opinion evidence in the record. Notably, in light of the medical record and testimony, the ALJ assigned little weight to the State Agency Medical Consultant's opinion that Ms. Blaylock did not suffer from any severe impairments. (*Id.* at 25-26). Accordingly, the ALJ arrived at the RFC for light work "out of an abundance of caution." (*Id.*). While the ALJ assigned great weight to the consulting psychologist's finding that Ms. Blaylock suffered no more than moderate limitations in activity, he assigned little weight to the finding of marked mental symptoms with an inability to respond to the rigors of a work environment. (*Id.* at 26). As to the later, the ALJ found this assessment was belied by the medical record and testimony received during the hearing. (*Id.*). Accordingly, the ALJ found the RFC for light work with the above-noted restrictions was appropriate.

At step four, the ALJ determined Ms. Blaylock had no past relevant work. (R. 26). At step five, the ALJ noted Ms. Blaylock was a "younger individual" as defined in the regulations and had at least a high school education. (*Id.*). The ALJ also found transferability of job skills was not an issue because Ms. Blaylock did not have past relevant work. (*Id.*). Considering Ms. Blaylock' age, education, work experience, and RFC, the ALJ found she could perform jobs

existing in significant numbers in the national economy, including cleaner, product assembler, and food preparation worker. (*Id.* at 26-27). In reaching this conclusion, the ALJ relied on the testimony of a vocational expert regarding the effect of the limitations imposed by Ms. Blaylock's RFC. (*Id.* at 27). Accordingly, the ALJ found Ms. Blaylock had "not been under a disability, as defined in the Social Security Act," since the alleged onset date, as amended. (*Id.*).

Ms. Blaylock appealed to this court on February 7, 2014, by filing a *pro se* complaint. (Doc. 1). The complaint states Ms. Blaylock suffers from "major depression." (*Id.* at 2). After the Commissioner answered (Doc. 7) and the Clerk of Court entered a briefing letter (Doc. 8), Ms. Blaylock never filed a brief in support of her complaint. Likewise, Ms. Blaylock did not reply to the Commissioner's brief in support of the decision. (Doc. 9). All deadlines for submitting briefs have passed and this matter is ripe for adjudication.

## II.      Standard of Review

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining: (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner; and (2) whether the correct legal standards were applied. *See Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen,* 793 F.2d

1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620 (1966)).  Indeed, even if the court finds the evidence preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles,* 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen,* 815 F.2d 622, 624 (11tj Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler,* 748 F.2d 629, 635 (11th Cir. 1984).

### III.    Discussion

As noted above, Ms. Blaylock has failed to submit any brief, argument, list of authorities, or statement in support of her claims.  Ms. Blaylock has failed to point to any errors in the ALJ's opinion despite the fact that she has had three opportunities to do so: (1) her complaint; (2) an initial brief in support of her claim; and (3) a reply to the Commissioner's brief.

Nonetheless, and in light of the standard applicable to *pro se* filings, the court has thoroughly reviewed both the ALJ's opinion and the entire evidentiary record.  The court concludes the ALJ applied the proper legal standards and his decision is supported by substantial evidence.  Accordingly, the ALJ did not err when he concluded that Ms. Blaylock is not disabled.

### IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Blaylock's arguments, the court finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law.  Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 4th day of September, 2015.

                                                STACI G. CORNELIUS
                                                U.S. MAGISTRATE JUDGE